IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**MARYLAND GREEN PARTY,** *et al.,*      *

    *Plaintiffs***,**     *

      v.     *     Civil Action No. _____

**LAWRENCE J. HOGAN, JR.,** in his   *
    Official Capacity as Governor of
    Maryland, *et al*.,     *

    *Defendants***.**     *

        *   *   *   *   *   *   *   *   *

**MARYLAND GREEN PARTY'S AND STEVEN ANDREW ELLIS'S REPLY
IN SUPPORT OF
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

Maryland Green Party ("Green Party"), and Steven Andrew Ellis ("Ellis"), Plaintiffs, by undersigned counsel, submit the following reply in support of their Motion for a Preliminary Injunction.

### **INTRODUCTION**

On May 19, 2020, the Green Party and Mr. Ellis, along with the Libertarian Party of Maryland ("Libertarian Party") and Robert S. Johnston, II ("Johnston") (collectively "Plaintiffs"), filed, *inter alia*, a motion for a temporary restraining order and/or preliminary injunction. *See* ECF Doc. No. 2. By a letter to the Court dated May 20, 2020, the Plaintiffs withdrew their motion to the extent that it requested a Temporary Restraining Order. *See* ECF Doc. No. 7. The Court held a telephone conference with counsel on May 22, 2020, and entered a scheduling order for the briefing and hearing of the Plaintiffs' motion for a preliminary injunction. *See* ECF Doc. No. 13. The Green Party and Mr. Ellis incorporate by reference the Memorandum that they filed in support

of their motion for a temporary restraining order and/or preliminary injunction and the papers supporting the motion.  *See* ECF Doc. No. 2-1 through 2-5.

### **FACTUAL SUPPLEMENT**

On June 3, 2020, Governor Hogan renewed his March 5, 2020, proclamation of a state of emergency and catastrophic health emergency in Maryland.  *See* https://governor.maryland.gov/wp-content/uploads/2020/06/4th-Renewal-of-State-of-Emergency-6.3.20.pdf (last accessed June 3, 2020).  Although Governor Hogan has relaxed some restrictions on activities in Maryland, substantial restrictions to combat the COVID-19 pandemic continue to exist across the entire State of Maryland and the most populous counties continue to have greater restrictions than those imposed by Governor Hogan.

Attached to this Reply is the Supplemental Affidavit of Samuel H. Hobbs ("Hobbs Supp. Aff.").  Exhibit 1 to Mr. Hobbs' Supplemental Affidavit is the Maryland Green Party Ballot Access Plan, dated December 11, 2019.  Exhibit 2 to Mr. Hobbs' Supplemental Affidavit, a report to the Green Party Coordinating Council dated February 28, 2020, explicitly references the ramping up process – "Although we are hitting our target for February, it is worth pointing out that our February goals were deliberately modest.  Now with the weather improved and campaign season in full swing, me must execute our planned increase of intensity throughout March, April and beyond."  However, Exhibit 3 to Mr. Hobbs Supplemental Affidavit, a report to the Maryland Green Party Coordinating Council dated March 17, 2020, announced the new COVID-19 reality – "Corona virus panic hit right as we were in the process of publicizing and recruiting for that campaign, and it is safe to say now that it will simply not be happening in the form we envisioned."

Also attached to this Reply is the Supplemental Affidavit of Steven Andrew Ellis  (Ellis Supp. Aff.).  Exhibits 1 and 2 to Mr. Ellis's Supplemental Affidavit show the Green Party's

continued social media attempts beginning in January 2019, to move the petition process along, Among the Green Party's social media posts were requests that people download and sign a petition that was delivered electronically to the signer but had to be returned in hard copy to the Green Party.  However, it was not until the State Board of Elections adopted SBE Policy 2020-01: Temporary Electronic Petition Signature Acceptance on April 22, 2020, that the Board agreed to accept direct electronic signatures.  Mr. Ellis proactively sought guidance from the State Board regarding electronic signatures and the Green Party on its own and its own expense developed software to process electronic signatures.  Ellis Supp. Aff. ¶¶ 8-9.

## ARGUMENT

The Defendants' opposition to the Plaintiffs' motion for a preliminary injunction fails to take into account the undeniable fact that since early March 2020, we have not been living in ordinary times in Maryland and elsewhere nearby.  *Cf. League of Women Voters of Virginia v. Virginia State Board of Elections*, ___ F. Supp. 3d ___, ___, 2020 WL 2158249 at*8 (W.D. Va. May 5, 2020) (approving consent decree enjoining witness signature requirement for absentee ballots for forthcoming Virginia primaries).  The Defendants' opposition also fails to take into account the time dynamics of signature collection; signature drives tend to ramp up in the final weeks of a collection period.  *See* Richard L. Hasen, *Direct Democracy Denied:  The Right to Initiative in a Pandemic*, forthcoming University of Chicago Law Review Online (2020) at 7 (available at file:///C:/Users/markstic/Downloads/SSRN-id3608472%20(1).pdf ) (citing *Bambeneck v. White*, 2020 WL 2123951 at * 3 (C.D. Ill May 1, 2020)).

Given current conditions, the 10,000-signature requirement places an impermissible burden on the Plaintiffs' First Amendment rights.  The Green Party had collected approximately 5,000 signatures as of the end of February 2020 and was on target to collect 15,000 signatures by

May or June – collecting 50% more than were required to provide a cushion for disqualified signatures. Because of the COVID-19 pandemic and the various emergency orders imposed by Governor Hogan and local governments, the Green Party cannot collect more wet signatures by traditional means of solicitation. The Defendants' claim that the Green Party's electronic solicitations have been "half-hearted" is demonstrably false. As shown by the Exhibits to Mr. Ellis' Supplemental Affidavit, the Green Party constantly was seeking signatures electronically from September 2019 up to April 2020. The process that a signer had to follow before the adoption of SBE Policy 2020-01, was cumbersome. A signer had to download and print in hard copy a signature petition from the internet, sign the petition with a wet signature, and return the hard copy document to the Maryland Green Party. Ellis Supp. Aff. ¶4. That process produced only approximately 100 signatures. Ellis. Supp. Aff. ¶¶ 5-7. After the April 22, 2020, adoption of SBE Policy 2020-10, Mr. Ellis immediately began to work with the State Board and then the Green Party on its own to develop and electronic interface that would work and satisfy the State Board. Once the software was available, June 1, 2020, the Green Party immediately began to solicit signatures online. In three days, the Green Party has collected 76 signatures through the new electronic interface. Ellis Supp. Aff. ¶10. However, some of those signatures duplicate wet signatures that the Green Party already had collected, and it is not known how many signatures can be garnered through this new method.

The Plaintiffs' motion for a preliminary injunction that initially sought a reduction of the signature requirement from 10,000 to 1,000 and relief regarding the signature verification standards employed by the State Board. The Defendants' opposition focuses on that number and the fact that the Plaintiffs had from January 2019 to collect signatures. The cases from other states that have reduced signature requirements in light of the COVID-19 pandemic have balanced the

time for collecting signatures. However, a mechanical reduction of the signature number by the proportion of months lost versus the entire period had there been no pandemic, makes no sense in light of reality. Not all months are created equal – the types of events at which signatures typically are collected do not occur in cold weather months and there is greater public interest in politics and elections just prior to an election as opposed to almost two years before the election. The Green Party is willing to accept for the sake of argument the Defendants position that 1,000 signatures is too low. At the time that the COVID-19 pandemic struck, the Green Party, which has had successful petition drives for the past 20 years, was at approximately one-third of its goal of 15,000 signatures. The Green Party would suggest that 3,333 signatures, one-third of 10,000, is a reasonable number that balances the Defendants' interests in having political parties show a modicum of support versus the current reality. The Green Party's collection of one-third of its goal in the off year before an election shows substantial support for the party. Had COVID-19 and the various governmental orders not occurred in March 2020, the Green Party would have had a successful petition drive and met its 15,000 goal. Insofar as verification is concerned, the Green Party's initial goal of 15,000 signatures had a built-in allowance for a 33% rejection rate. Were the Court to grant preliminary relief that reduced the signature number to 3,333, the Green Party would withdraw without prejudice its request for a preliminary injunction with request to the State Board's verification standards, subject to being renewed should the State Board's rejection of the Green Party's signatures bring the total number of validated signatures below 3,333.

## CONCLUSION

For the reasons stated above, the Maryland Green Party respectfully request that the Court enter a preliminary injunction prohibiting the strict enforcement of EL § 4-102, and (i) direct the Defendants to grant the Green Party new party status under EL § 4-102 if it submits a new party petition with 3,333 valid signatures of Maryland registered voters on or before August 3, 2020.

Respectfully submitted,

June 3, 2020

 */s/ H. Mark Stichel*
H. Mark Stichel, Bar No. 02939
ASTRACHAN GUNST THOMAS, P.C.
217 East Redwood Street, Suite 2100
Baltimore, Maryland 21202
Telephone: 410.783.3550
Facsimile: 410.783.3530
hmstichel@agtlawyers.com

*Counsel for Maryland Green Party and Steven Andrew Ellis*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of June, 2020, a copies of the foregoing Reply and Supplemental Affidavits of Samuel H. Hobbs and Steven Andrew Ellis were served upon all counsel of record via the Court's ECF System.

 */s/ H. Mark Stichel*
H. Mark Stichel, Bar No. 02939